UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RITO BILL SANCHEZ,  Case no. 19-12102-t7

Debtor.

# OPINION

Before the Court is debtor Rito Bill Sanchez's motion to avoid a judicial lien on his house because it impairs his homestead exemption. The motion is opposed by the lienholder, Debtor's former attorney Roger Moore. The primary issue is the value of the house. The Court concludes that, on the petition date, the house was worth no more than Sanchez's homestead exemption, so Moore's judgment lien should be avoided in its entirety. The Court also concludes that Moore cannot enforce his judgment without violating the New Mexico Rules of Professional Responsibility.

1.  Facts.[1]

Mr. Sanchez lives in a small, one bedroom, one bathroom house in Albuquerque, New Mexico's South Valley. The street address is 1112 David Court SW. Sanchez testified that the house was built by students at Albuquerque's Technical Vocational Institute, trucked to the lot, and installed by his father and him in 1973, when Sanchez was about 16. Sanchez has lived in the house ever since. At some point Sanchez built an addition to the house, nearly doubling its square footage. Sanchez did most of that work himself. The house is heated by a furnace and a small wood-burning stove, and is cooled by a swamp cooler. Neither is centralized.

---

[1] The Court takes judicial notice of its docket in this case and Adv. No. 19-1082, and Case. No. D-202-DM-2010-00260 in the Second Judicial District Court, State of New Mexico, to consider the contents of the dockets but not the truth of the matters asserted therein. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020). With the parties' permission, the Court also takes judicial notice of the exhibits and transcript of the trial on the merits held July 15, 2020, in the adversary proceeding.

The house is in poor condition. The roof has a significant leak. Because of the leak, some of the fascia boards, soffits, and shingles need to be replaced. The tongue-and-groove ceiling in the main living area sags because of the roof leak. For the least three years Sanchez has held the ceiling in place with a "stripper pole." Some of the single-paned windows are cracked and have been taped over. The exterior of the house is only partially bricked. Both the interior and exterior are very cluttered.

Sanchez has done much of his learning outside of the classroom. He is a good mechanic and is experienced and knowledgeable about basic construction skills. However, he has difficulty reading and writing.

On June 22, 2010, Moore began representing Sanchez in a state court child custody dispute.[2] Within two months, Sanchez owed Moore in excess of $15,000 in attorney fees and costs. Initially there was no written agreement between the parties. Moore drafted a retainer agreement and had Sanchez sign it on August 26, 2010. Under the agreement, Sanchez was to pay Moore $7,000 within three weeks, which he did. Moore voluntarily reduced his fee by $3,700, leaving a balance of about $5,100. The agreement called for interest on all unpaid fees of 2% per month. The agreement included language purporting to grant Moore a charging lien on all of Sanchez's real and personal property.[3]

---

[2] Sanchez previously appeared pro se.

[3] Charging liens grant attorneys an interest in any judgment or settlement fund in favor of their client, to secure payment of their fees. If there is no such fund, there is nothing for the charging lien to attach to. *See, e.g., Sowder v. Sowder,* 977 P.2d 1034, 1037 (N.M. App. 1999) (listing the elements of an effective charging lien in New Mexico). As this Court previously noted, Moore's "charging lien was improper and legally ineffective." *In re Sanchez,* 2020 WL 4577113, *1 n.5 (Bankr. D.N.M.). The Court also ruled that the language in the retainer agreement did not grant Moore a consensual lien on the house. *Id.*

On October 20, 2010, Moore moved to withdraw as Sanchez's attorney. The state court judge granted the motion December 16, 2010.[4]

A month later Moore sued Sanchez in state court to collect unpaid attorney fees and foreclose the lien(s) mentioned in the retainer agreement. Sanchez did not defend. The state court judge declined to foreclose the alleged liens but did enter, on March 1, 2011, a default judgment against Sanchez for $18,732.64,[5] together with post-judgment interest at 24% per year.[6] Moore recorded a transcript of the judgment in Bernalillo County, encumbering Sanchez's house with a judgment lien.[7]

In 2018, Moore sued to foreclose the judgment lien. By then the judgment had ballooned to $50,073.90. The foreclosure action prompted Sanchez to file this case, on September 11, 2019. Moore asserts that on the petition date the judgment debt exceeded $56,000.

Moore brought a denial of discharge proceeding against Sanchez and prevailed in part. *See In re Sanchez,* 2020 WL 4577113 (Bankr. D.N.M.). In that proceeding the Court deferred ruling on certain issues raised by the pleadings until Sanchez's lien avoidance motion could be heard. In addition, the Court reserved ruling on the collectability of the accrued interest. Thus, the issues before the Court are the value of the house, Sanchez's request to quiet title, and whether Moore can collect a judgment debt that is predominately unpaid interest that accrued at 24%.

---

[4] Sanchez represented himself for the remainder of the custody action, which continued for several months after Moore withdrew.

[5] The default judgment included $14,803.17 in "liquidated damages," $515.69 in interest, $3,236.75 in attorney fees incurred to obtain the default judgment, and $177.03 in costs.

[6] This rate was chosen because of the contract rate of 2% per month; otherwise it would have been the default statutory rate of 8.75%. *See* N.M.S.A. § 56-8-4(A).

[7] Moore has also recorded a document entitled Claim of Lien and three notices of lis pendens. Sanchez has asked the Court to declared these encumbrances null and void.

2. <u>Avoiding a Judgment Lien that Impairs a Homestead Exemption</u>.[8]

Section 522(f)(1)(A) provides:

Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . a judicial lien . . . .

Section 522(f)(2)(A) provides:

For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
    (i) the lien;
    (ii) all other liens on the property; and
    (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Sanchez claimed the New Mexico exemptions in this bankruptcy case, including New Mexico's $60,000 homestead exemption. *See* N.M.S.A. § 42-10-9.

To rule on whether Moore's judgment lien impairs Sanchez's homestead exemption, the Court must determine the value of the house. Value, for § 522 purposes, "means fair market value as of the date of the filing of the petition[.]" § 522(a)(2); *In re Martinez*, 2015 WL 3814935, at *4 (Bankr. D.N.M.). Closing costs are not deducted when calculating fair market value. *In re Sheth,* 225 B.R. 913, 918 (Bankr. N.D. Ill. 1998); *In re Aslanyan,* 2017 WL 6520450, at *2 (Bankr. E.D. Cal.); *In re Keenan,* 364 B.R. 786, 807 n.31 (Bankr. D.N.M. 2007).

There are no liens or mortgages on the house other than Moore's judgment lien.[9] If the house is worth $60,000 or less, Moore's lien must be completely avoided. If the house is worth more than $60,000, Moore's lien can remain attached to the non-exempt excess value. *See, e.g., In*

---

[8] All statutory references are to 11 U.S.C. unless otherwise indicated.
[9] There could be a property tax lien, but there is no evidence of that in the record.

*re Littig,* 2019 WL 3268792, at *4 (Bankr. C.D. Ill.) ("Where there is equity remaining that supports a lien in part, that amount of the lien should not be avoided"). In the event of partial or total judgment lien avoidance under § 522(f), postpetition appreciation of the homestead benefits only the debtor, not the judgment lienholder. *See* 4 Collier on Bankruptcy ¶ 522.11[3] n.23 and associated text.

3. <u>Valuing the House</u>.

Two witnesses opined about the value of the house. The first was Sanchez's expert witness, Daniel Armstrong, an Albuquerque Realtor. He took photographs of the inside and outside of the house and ran a comparable market analysis on August 2, 2019. Armstrong found five sales he thought were comparable, adjusted for size and the number of bedrooms, and averaged the resulting values. His conclusion was that the house was worth $55,300 on the petition date. The Court's impression of Armstrong's valuation method is that it was fairly crude but was good enough to give the Court a "ballpark" value of the house.

Moore's expert, Robert Stiles, is a certified real estate appraiser, making him more qualified than Armstrong to give an opinion about the value of the house. Stiles concluded that the house was worth $82,000 on September 17, 2020.

There are a number of problems with Stiles' appraisal. First, the appraisal date is September 17, 2020. In the year between the petition date and Stiles' appraisal, the Albuquerque real estate market increased substantially. Stiles opined at the final hearing that the house was worth about $70,000-$71,000 on the petition date.

Second, Stiles made significant assumptions about the condition of the house that do not appear warranted. This is shown by the following language in his appraisal report:

> Hypothetical Conditions: (A hypothetical condition is that which is contrary to what exists, but is asserted by the appraiser for the purpose of analysis. Any

> hypothetical condition may affect the assignment results.) As of the date of our in inspetion [sic] the subject property reflected a poor program of maintenance both at the exterior and interior. Photos taken at time of my inspection have been included for review. *In an effort to provided [sic] more supporative [sic] value, my* client has provided photos from a proir [sic] inspection dated August 2nd, 2019. *Said photos appear to reflect a superior level of maintennace [sic] and care from what was found at time of our inspection.*
>
> Extraordinary Assumptions: (an extraordinary assumption is directly related to a specific assignment and presumes uncertain information to be factual. If found to be false this assumption could alter the appraiser's opinions or conclusions. Any extraordinary assumption may affect the assignment results.) *The subject is assumed to be in habital [sic] condition.* This appraisal report does not guarantee or imply that the property is free of defects and we suggest that the reader, if concerned, secure a professional inspection or take other necessary steps to insure the property is free of any defects or adverse conditions. *Should an inspection occur and any negative conditions be revealed as it pertains to latent construction defects or should any subsequent subsoil survey reflect adverse conditions we reserve the* right to amend this report accordingly.
>
> Subject is of fair to poor quality materials and fixtures and reflects a fair program of maintenance. *It is assumed that this property meets or exceeds minimal requirements of all building codes,* zoning ordinances and other governmental regulations.

(emphasis added).

Third, Stiles said in his report that the house is 35 years old, with an effective age of 20. That is not correct. The main house was built in the early 70s, making it about 47 years old (the addition may have been built in the 80s). Given the poor condition of the house, its effective age must be at least its actual age, if not more.

Fourth, the appraisal report contains this statement on page 5 of an Addendum:

> The weighted value approach reflects an adjusted price of $85,000. However, due to condition, the most representitive [sic] value, would be $72,000.

Corroborating this lower valuation (or compounding the mistake, if it is a mistake), the first page of the Subject Property Photo Addendum contains the following:

> Front View of Subject Property
> Appraised Date: September 17, 2020

Appraised Value: $72,000

Fifth, Stiles testified that he had difficulty inspecting the house because of the cluttered interior. Apparently, this difficulty made it impossible for Stiles to determine how the house was heated or cooled, as he put "unknown" next to "HVAC." He also said that the type of foundation for the house was unknown.

In light of the problems listed above, the Court has to discount the weight of Stiles' opinion.

It seems reasonable to conclude that on the petition date the house was worth between $55,300 and $71,000. The Court concludes that the condition of the house substantially affects its value. Before the house could be sold, it would need a new roof, a new ceiling in the main living area, and fairly extensive repairs to the eaves, soffits, and siding. A great deal of exterior and interior junk would have to be hauled away. It would be very surprising if a good inspection did not turn up many thousands of dollars of needed repair work.[10]

Because of the condition of the house, the Court concludes that a value toward the low end of the $55,300-$71,000 range is appropriate. The Court finds and concludes that on the petition date the house was worth no more than $60,000.

4.  The New Mexico Rules of Professional Conduct.

In its opinion entered after trial of the discharge proceeding, the Court raised the issue whether the term in the retainer agreement obligating Sanchez to pay interest of 2% a month on unpaid fees violated the New Mexico Rules of Professional conduct. 2020 WL 4577113, at *1,

---

[10] Given that Sanchez built the addition himself and, as far as the record indicates, is not a licensed contractor, an inspection likely would reveal a number of significant building, plumbing, and/or electrical code violations.

n.3.[11] The Court reserved ruling on the issue until Sanchez's § 522(f) motion was heard. The Court now concludes that Moore cannot collect his judgment against Sanchez without violating the New Mexico Rules of Professional Conduct.

Within two months after hiring Moore, Sanchez owed him more than $15,000. There was no written agreement between the parties. Moore drafted a retainer agreement and had Sanchez sign it. Under the agreement, Sanchez paid Moore $7,000, which left a balance of about $5,100, and agreed to pay 2% interest a month on any unpaid fees.

Attorneys practicing in New Mexico are governed by the New Mexico Rules of Professional Conduct, NMRA 16-100 *et seq.* NMRA 16-105, concerning attorney fees, states in part:

> A. Determination of reasonableness. A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses....
>
> B. Basis or rate of fees. Whenever a fee is charged ... the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client in writing.

The Court finds that, given the particular facts of this case, the 2% per month interest rate Moore imposed on Sanchez *ex post facto* was an unreasonable fee and/or expense. Interest rates have been low for more than a decade.[12] If Moore was concerned that Sanchez would not pay him,

---

[11] The Court has the authority to inquire into this matter as part of its ongoing duty to oversee the practice of lawyers appearing before it. *See, e.g., In re Otero Co. Hosp. Assoc., Inc.,* 617 B.R. 699, 704-05 (Bankr. D.N.M. 2020) ("[I]t is well-settled that the bankruptcy court has inherent authority to regulate the practice of attorneys who appear before it.") (citing cases); *In re Courtesy Inns, Ltd., Inc.,* 40 F.3d 1084, 1089 (10th Cir. 1994) ("The power to maintain order and confine improper behavior in its own proceedings seems a necessary adjunct to any tribunal charged by law with the adjudication of disputes"); *In re Timberon Water and Sanitation District,* 2009 WL 367685, at *1 (Bankr. D.N.M.) (quoting *Courtesy Inns).*

[12] The Court takes judicial notice that in August 2010, "Wall Street Prime" rate was 3.75%.

the answer was to limit or terminate the representation, not charge 24% interest. A lawyer renders highly specialized professional services for a fee; he is not in the business of making high interest rate loans to borrowers with poor credit. This is particularly true when the representation started months before the retainer was signed and where, as here, the client is unsophisticated and has limited ability to read or write. If any interest was to be charged at all, it should have been at a rate no higher than needed to compensate Moore for the time value of money.

Moore is an experienced, able attorney. It looks terrible when a stalwart member of the bar charges an unsophisticated client a very high rate of interest, gets a default judgment against him that accrues interest at the same high rate, waits years for the judgment debt to mushroom, and then tries to take the client's house through foreclosure.[13] Such actions bring dishonor to an honorable profession. No lawyer should try to take a poor man's house to pay a fee, especially if most of the fee is accrued interest. Because Moore's judgment against Sanchez is primarily for unpaid interest that accrued at 24%, the Court concludes that Moore cannot not collect it without violating NMRA § 16-105(A)'s prohibition against collecting an unreasonable fee or expense.

5. <u>Quiet Title</u>.

Sanchez has requested that the Court quiet title to his house. Based on the Court's conclusions about valuation, that is an appropriate request. The Court will enter an order that Sanchez owns the house, free and clear of Moore's judgment lien, claim of lien, and notices of lis pendens, all of which should be released.

---

[13] Given the condition of the house and ordinary sale closing costs (usually about 8%), it seems very unlikely that Moore would collect any part of his judgment even if he were allowed to foreclose. Thus, while the house has great practical and sentimental value to Sanchez, it has little or no value to Moore. The Court cannot understand why Moore has spent so much time and effort to achieve a result that would not benefit him but would seriously harm Sanchez.

-9-
Case 19-12102-t7    Doc 53    Filed 11/25/20    Entered 11/25/20 11:39:14 Page 9 of 10

Conclusion.

Sanchez's small, old South Valley house is in poor condition and was worth no more than $60,000 on the petition date. His request to avoid Moore's judgment lien therefore is well taken and will be granted. Sanchez's request to quiet title to the house in his name, free of Moore's liens and notices, also will be granted. Finally, the Court concludes that Moore cannot collect his judgment against Sanchez without violating the New Mexico Rules of Professional Responsibility. A separate order will be entered consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 25, 2020

Copies to: Counsel of record